IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW RAMOS | No. 04 - CR - 10275 - NG |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Matthew Ramos respectfully submits this memorandum and the appended letters of support to assist the Court in sentencing.

On July 31, 2007, defendant pled guilty to a two-count indictment handed down in 2004 charging him with conspiracy to distribute, and to possess with intent to distribute, oxycodone, in violation of 21 U.S.C. § 846 (Count 1) and distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1) (Count 2).

For the reasons that follow – in particular, Mr. Ramos' extraordinary and successful efforts to overcome severe opiate addiction and to turn his life around, his youth and lack of any prior criminal history whatsoever, and the arbitrary harshness of the oxycodone guidelines – Mr. Ramos submits that a sentence of **time served** (the day of his arrest) followed by **three years of supervised release** is sufficient, but not greater than necessary, to effectuate the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Indeed, this case is on all fours with the recent decision in *Gall v. United States*, 128 S.Ct. 586 (2007), in which the Supreme Court affirmed a non-custodial sentence imposed on a young drug offender like Mr. Ramos in remarkably analogous circumstances.

## **Background**

Mr. Ramos was 21 years old at the time of his arrest in 2004 and is now 25. A life-long resident of Massachusetts, Mr. Ramos had a middle-class upbringing and shared a good relationship with his parents and younger sister.

As a teenager, Mr. Ramos began to use alcohol, marijuana, and a variety of other substances, developing a severe poly-substance abuse problem. In the two years leading up to his arrest, Mr. Ramos was using oxycontin and GHB on a daily basis, as well as other drugs with varying degrees of regularity including cocaine, methamphetamine, and ecstasy.

In support of his addiction and to make money, Mr. Ramos engaged in the criminal activity that gave rise to the present charges. But notably, Mr. Ramos ceased selling drugs in late spring 2004, several months prior to his arrest in August on the instant charges (which are based on a controlled buy in the fall of 2003). His personal drug abuse, however, continued unabated until the day of his arrest.

Mr. Ramos entered the Spectrum residential treatment program as a condition of pretrial release on September 17, 2004. According to Pretrial Services Officer Judy Oxford:

> Although Mr. Ramos was not entirely agreeable about entering treatment, he kept a positive attitude and participated as requested. He was quiet but well liked by staff and clients. <u>After approximately two months in treatment, Mr. Ramos began making marked progress in his participation and attitude towards treatment. No longer, was his participation a matter of complying with the Court but his efforts appeared more fueled by his desire to make significant lifestyle changes</u>. He began seeking extra "homework" assignments and presented very thoughtful, detailed process notes regarding his feelings and perspectives. Mr. Ramos independently chose to move into sober housing as a way of increasing his chance for continued sobriety after leaving Spectrum.

Letter to the Court dated July 31, 2007 (emphasis added). Mr. Ramos has been drug free during

the more than three years that have passed since his entry into Spectrum.

While on pretrial release, Mr. Ramos for the first time obtained and maintained employment in a steadily improving series of positions.  He began with restaurant work but quickly advanced to skilled and challenging office jobs, first as a technical recruiter for a company called Oxford International (6/06-7/07) and most recently as an account manager for a start-up called Bowden Group, where he earns an annual salary of $35,000 plus commissions.

In addition, while his case has been pending, Mr. Ramos has attended several different institutions of higher learning to earn credits toward a bachelor's degree and has received excellent grades.  While Mr. Ramos has temporarily suspended his studies in order to pursue his most recent job opportunity and due to uncertainty about the disposition of this case, earning a college degree remains a goal.

## **Argument**

Mr. Ramos submits that the proposed sentence of time served followed by three years of supervised release will be "sufficient, but not greater than necessary, to comply with the purposes of sentencing."  18 U.S.C. § 3553(a).

The Guideline Sentencing Range calculation of 37 to 46 months imprisonment is undisputed and the Court is required to consider it.  *See* 18 U.S.C. § 3553(a)(4); *Gall*, 128 S.Ct. at 596 ("the Guidelines should be the starting point and the initial benchmark").  However, the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not presume that the Guidelines range is reasonable" and must "make an individualized assessment based on the facts presented." *Id.* at 596-7.  Indeed, "the Guidelines are only one of the factors to consider . . . and 3553(a) directs the

judge to consider sentences other than imprisonment." *Id.* at 602.

### A. The Guideline Sentence is Inappropriately Severe in this Case.

Here, the guideline range is excessive and a non-incarceration sentence is warranted for multiple reasons.

<u>First</u>, Mr. Ramos has demonstrated rehabilitation that is truly extraordinary on several levels. He ceased drug trafficking activity months before his arrest. He also has grappled with and held at bay his addictions for more than three years, without relapse, not merely to comply with the Court's directives but in order to live a better life. Similar considerations were central to the non-incarceration sentence in *Gall*. Even in the prior, more stringent guideline-centric regime, this Court recognized "extraordinary rehabilitation" as a ground for departure or variance. *See, e.g., United States v. Woodley*, 344 F. Supp. 2d 274, 282 (D. Mass. 2004) (Gertner, J.) (noting that the "touchstone of extraordinary rehabilitation is a fundamental change in attitude"); *United States v. Perella*, 273 F. Supp. 2d 162 (D. Mass. 2003) (Gertner, J.) (imposing probation sentence for bank robbery based on extraordinary rehabilitation of drug addiction).[1]

<u>Second</u>, as in *Gall*, defendant's immaturity – both Mr. Ramos and Mr. Gall were 21 at the time of offense conduct – warrants a non-incarceration sentence. *Gall*, 128 S.Ct. at 601 (quoting with approval the district court's observation that "immaturity at the time of the offense conduct is not an inconsequential consideration" and noting that "consideration of that factor finds

---

[1] In light of *Gall*, moreover, the nature and extent of rehabilitation need not be "extraordinary" in order to warrant a non-guideline sentence. *See* 128 S.Ct. at 594 ("We reject . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.").

support" in Supreme Court precedent). Notably, moreover, in contrast to the defendant in *Gall*, Mr. Ramos has no prior criminal history whatsoever, highlighting the fact that his drug-induced criminal activity is even more aberrant against the backdrop of his life as a whole.

Third, the guidelines for drug offenses generally deserve little deference because they were not adopted after consideration of "empirical data and national experience." *See Kimbrough v. United States*, 128 S.Ct. 558, 567 (2007) ("The Commission did not use this empirical approach in developing the Guidelines for drug-trafficking offenses.").[2]

### B.  The Proposed Sentence Will Provide Just Punishment.

A felony conviction bringing a three year term of supervised release represents a substantial penalty that adequately reflects the seriousness of the offenses of conviction, will promote respect for the law, and provide just punishment as required by section 3553(a)(2)(A). As the Supreme Court noted in *Gall*, probation and/or supervised release amount to a "substantial restriction of freedom." 128 S.Ct. at 595. Conversely, a "sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id.* at 599.

---

[2] Put another way, the Guidelines contain no normative justification for why 272 oxycontin tablets should be deemed "equivalent" to 145.7 kilograms of marijuana, resulting in a base offense level of 26. Defendant would be prepared to draft and submit more extensive briefing to demonstrate the arbitrary and capricious nature of the Guidelines' drug quantity table if it would be helpful to the Court. Here, however, there are ample other grounds that militate in favor of the proposed non-custodial sentence and therefore extensive litigation of drug quantity *vis a vis* sentencing may best be left for another day in a different case.

C. **The Proposed Sentence Will Adequately Deter Criminal Conduct and Protect the Public.**

The proposed sentence will be more than sufficient to deter Mr. Ramos from future criminal activity, as required by sections 3553(a)(2)(B) and (C). "The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that Defendant is a danger to society." *Gall*, 128 S.Ct. at 593. The interest in general deterrence will also be served by demonstrating to offenders that, in turning their lives around, there is hope of redemption.

D. **The Proposed Sentence Will Provide the Defendant With Needed Treatment.**

Defendant is not in need of treatment of the sort that a Bureau of Prisons placement would uniquely facilitate. To the contrary, a term of imprisonment would risk throwing the defendant off track and exposing him to harmful influences. "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who . . . understands the consequences of his criminal conduct and is doing everything in his power to forge a new life." *Gall*, 128 S.Ct. at 593.

## Conclusion

For the foregoing reasons, the Court should impose a sentence of time served followed by three years of supervised release. In view of defendant's financial circumstances and potential forfeiture obligations, the Court should not impose any fine.

Respectfully submitted,

MATTHEW RAMOS
By his attorney,

/s/ William W. Fick
William W. Fick, Esq.
BBO# 650562
FEDERAL DEFENDER OFFICE
408 Atlantic Ave., 3d Floor
Boston, MA 02110
617-223-8061
WILLIAM_FICK@FD.ORG

Dated: January 2, 2008

## Certificate of Service

I, William W. Fick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 2, 2008.

/s/ William Fick