1

```
                  UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF MASSACHUSETTS



     UNITED STATES,                    )   CR. NO. 04-10275-NG

     VS.                               )   COURTROOM NO. 2

     MATTHEW RAMOS,

             DEFENDANT                 )   1 COURTHOUSE WAY

                                       )   BOSTON, MA  02210


                         FINDINGS OF FACT

                           SENTENCING









                BEFORE THE HONORABLE NANCY GERTNER

                UNITED STATES DISTRICT COURT JUDGE



                        VALERIE A. O'HARA

                     OFFICIAL COURT REPORTER
```

```
 1   A P P E A R A N C E S:

 2        United States Attorney's Office, by KENNETH G. SHINE,
     UNITED STATES ASSISTANCE ATTORNEY, One Courthouse Way,
 3   Suite 9200, Boston, Massachusetts  02210, for the
     United States;
 4
          Federal Defender's Office, BY WILLIAM W. FICK, ESQ.,
 5   408 Atlantic Avenue, Suite 328, Boston, Massachusetts
     02210, for the Defendant.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

FINDINGS OF FACT

THE COURT: Thank you. I'm obliged to start with the guidelines, and everyone agrees that the guideline range is correct. Gall says I'm to give serious consideration to the guidelines, and I do. The guideline range is 37 to 46 months.

The language of Gall, the Gall decision is an interesting one. It says that the guidelines were a rough approximation of what the purposes of sentencing were. It said that there's a concern here when obviously different offenders are treated similarly and that that promotes disrespect for the law.

So the question here is whether or not Mr. Ramos comes before me like any other seller of that quantity of drugs or whether there are meaningful differences which ought to be reflected in my sentence. I conclude that there are meaningful differences here between him and other sellers of Oxycontin and other people who have come into my court, meaningful differences which I should reflect in my sentence because if I don't it will promote disrespect for the law and that there are also meaningful differences that will predict he will not recidivate, meaningful differences that predict that all the purposes of the sentencing can be met by a sentence that is not an incarcerated sentence.

The other significant part of Gall is that Gall

1  recognized for the very first time in a very long time that
2  probation is not nothing, that there are substantial
3  restrictions on an individual's freedom in probation, that
4  we can structure a probationary sentence that meets all the
5  purposes of sentencing, and that is entirely appropriate.
6  This was one of the things that the guidelines ignored, and
7  the guidelines dramatically changed from preguideline
8  practice and which the Supreme Court is essentially saying
9  we can now look at again.
10      So, what are the differences between Mr. Ramos and
11 similarly situated offenders here?  Obviously the Gall
12 paradigm makes a great deal of sense in this situation
13 because Mr. Gall began to commit crimes while he was in
14 college under I think he was 20 and while he was addicted to
15 drugs, and some of the changes that came about for Gall was
16 education, employment and age.
17      You don't have the age factor as much with
18 Mr. Ramos but certainly in terms of education and in terms
19 of work, there's every reason to predict, just like
20 Mr. Gall, Mr. Ramos will not do this again.  I am also, as
21 always, moved by what Judy Oxford says in the course of
22 my -- to some degree I love to use pretrial services as
23 experts because they can make sometimes the distinctions
24 that are difficult for a Judge to make, the distinctions
25 between those people that are really getting it and those

1  people who are not.  They see even more.  They see all the
2  cases in the court, I only see the cases that come to my
3  particular session, and so when they come forward and say
4  this man seems to have kicked the habit, I stand up and pay
5  attention.
6           She describes that he was originally looking like,
7  Mr. Ramos, when he entered Spectrum House for a 6- to
8  9-month structured residential program, he was not agreeable
9  about interim treatment, he participated sort of almost
10 grudgingly and then it says two months in his treatment he
11 began marked progress in his participation and attitude to
12 treatment, no longer was his participation a matter of
13 complying with the Court but his efforts more fueled by his
14 desire to make significant lifestyle changes.  He began
15 seeking extra homework assignments, and he independently
16 chose to move into sober housing as a way of increasing for
17 continued sobriety after leaving Spectrum House, so she
18 communicates to me that this man is different and that
19 imprisonment would get him to come to grips with what he
20 needed to do to change his life and to become amenable to
21 treatment.  That has already been accomplished.
22           I also have to admit that I was moved by the
23 letter that was provided by Mr. Fick which had been sent to
24 Mr. Ramos' mother and father from Spectrum House, right,
25 this is a 9-22-04 letter.

```
 1            MR. FICK:  That's correct.  It was attached to his
 2   file a lettered to the Court, a letter that was sent to his
 3   family from Spectrum.
 4            THE COURT:  Which is almost like a window into the
 5   changes.  A letter to his father, not a letter to the Court,
 6   not a letter that you expected to be splayed all over the
 7   record but a letter that says, you know, I think I see some
 8   changes in me, I think that I'm going to make a difference,
 9   that this is going to change my life.  And I read Mr. Ramos'
10   parents letters.  I'm moved by that as well.
11            I think then that I will adopt the defendant's
12   recommendation here.  Mr. Ramos, would you please stand.  I
13   am going to sentence you to time served which is essentially
14   one day, three years supervised release on all counts
15   concurrently, a fine of $2500 on Count One that should be
16   paid immediately or according to a Court-ordered repayment
17   schedule.  Interest will be waived.
18            You're to notify the U.S. Attorney's office for
19   this district within 30 days of any change of mailing or
20   residence address that occurs while the fine is unpaid.
21   While on supervised release, you're not to commit another
22   federal, local or state crime.
23            This is another thing that was interesting in the
24   Gall decision.  You have a felony conviction now.  You get
25   in trouble again and the odds are you will wind up
```

1  incarcerated, so a felony conviction time served plus
2  probation is not a lenient alternative here.  There are
3  consequences to this.
4       While you're on supervised release, you're to
5  refrain from the unlawful use of any controlled substance.
6  You will continue drug testing.  You're to make sure that
7  these changes have not gone backwards, submit to one drug
8  test within 15 days of today and two periodic drug tests
9  thereafter, not to exceed 104 tests per year.
10      You're obliged to submit to the collection of a
11 DNA sample as directed by probation.  There are standard
12 conditions which will be explained to you by probation.
13 You're prohibited from possessing a firearm or other
14 dangerous weapon.  You are to continue to participate in
15 substance abuse counseling programs directed by probation
16 which again may include 104 tests per year, and you may be
17 required to contribute to the cost of such services.
18      My recommendation here is that whoever supervisors
19 Mr. Ramos on probation regularly consult with Ms. Oxford so
20 whatever is going on will be a continuation of the care
21 here.  Again, you're to pay the balance of your fine
22 according to a repayment schedule.  You're prohibited from
23 incurring new credit charges while any financial obligation
24 remains outstanding, and you're to provide probation with
25 any requested financial information which could be shared

1   with the financial litigation unit of the U.S. Attorney's
2   Office.  You're to pay a special assessment of $200 also
3   which is due immediately.  That's in addition to the fine.
4   So, be on supervised release for three more years.  Whatever
5   help you've gotten before would continue.  We'll make sure
6   it's the same group of people.  You'll continue your
7   employment.  You'll continue on the path that you have been
8   on, and if you vary from that, there will be consequences,
9   but I think you understand that.
10                        - - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25